UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STANLEY JOHNSON, | |
| Plaintiff, | CIVIL ACTION NO. 1:19-CV-01877 |
| v. | (MEHALCHICK, M.J.) |
| JEFFERY LUTTON, M.D., et al., | |
| Defendants. | |

**MEMORANDUM**

Before the Court is a motion *in limine* (the "motion") filed by Defendant Jeffery Lutton, M.D. ("Lutton"), and Summit Physician Services d/b/a Summit Orthopedic Group ("Summit") (collectively "moving Defendants") in anticipation of trial.[1] (Doc. 77). Defendants' motion seeks preclusion of testimony regarding particular language and topics from expert Dr. Khaled J. Saleh ("Dr. Saleh") as it pertains to Johnson's informed consent and negligence claims. (Doc. 77, at 1-2). Plaintiff Stanley Johnson ("Johnson") opposes the motion. (Doc. 81). The motion has been fully briefed and is ripe for disposition. (Doc. 77; Doc. 78; Doc. 81).

For the following reasons, moving Defendants' motion *in limine* will be **GRANTED in part and DENIED in part**. (Doc. 77).

I. **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs initiated this action with the filing of a complaint on October 29, 2019, against moving Defendants, WellSpan Chambersburg Hospital ("WellSpan"), and WellSpan

---

[1] The other Defendant in this case, WellSpan Chambersburg Hospital concurs in the motion. (Doc. 77, at 2).

Summit Health.[2] (Doc. 1, at 2). On February 18, 2020, moving Defendant filed a Motion to Dismiss and strike portions of the complaint. (Doc. 22). On June 10, 2020, the Court denied moving Defendants' motion to dismiss. (Doc. 31). On December 23, 2020, Johnson filed a motion to amend/correct his complaint and modify the case management order which was granted on February 11, 2021. (Doc. 45; Doc. 51). On February 19, 2021, Johnson filed his amended complaint. (Doc. 53). WellSpan Summit Health filed a motion for summary judgment on March 30, 2021, and WellSpan filed a motion for partial summary judgment on the same day. (Doc. 56; Doc. 59). On April 20, 2021, the parties stipulated that Defendant WellSpan Summit Health be dismissed from the action and Johnson's corporate negligence claim against WellSpan be dismissed with prejudice. (Doc. 63). The Court approved the parties' stipulation on April 20 , 2021. (Doc. 64). On September 7, 2021, the parties consented to Magistrate Judge jurisdiction. (Doc. 72).

There are two remaining issues in this action: a claim against the moving Defendants and WellSpan's vicarious liability for negligence and a claim against Defendant Lutton regarding informed consent. (Doc. 53, at 16-20). Johnson's complaint stems from a series of three hip surgeries that were performed upon him by Defendant Lutton. (Doc. 53, at 3). Johnson alleges that Defendant Lutton was negligent in his treatment of Johnson by failing to take appropriate steps before the initial hip replacement to prevent him from developing heterotrophic ossification ("HO") and before the third surgery to prevent him from

---

[2] Johnson originally listed WellSpan Orthopedics as a defendant in this case. (Doc. 1, at 2). However, on January 31, 2020, the parties stipulated that "Dr. Lutton was not employed by Well[S]pan Orthopedics, but rather, was employed by [Summit]." (Doc. 19, at 1). The Court approved the stipulation on February 3, 2020, and substituted WellSpan Orthopedics with Summit as a named defendant. (Doc. 20).

contracting MRSA. (Doc. 53, at 3-7, 16-18). Johnson also claims that Defendant Lutton failed to advise Johnson of the risks associated with the surgeries, thus failing to obtain informed consent from Johnson. (Doc. 53, at 7, 19-20).

On February 1, 2022, moving Defendants filed a motion *in limine* along with a brief in support of the motion. (Doc. 77; Doc. 78). On February 15, 2021, Johnson filed a brief in opposition to the motion. (Doc. 81). On February 22, 2022, a final pretrial conference was held before the Court where the parties presented oral argument on the motion. (Doc. 84). The Court has scheduled a jury trial in this matter to being on Monday, March 28, 2022, at 9:30 AM in Harrisburg, Pennsylvania. (Doc. 76, at 1).

**II.    STANDARD OF REVIEW**

The court is vested with broad inherent authority to manage its cases, which carries with it the discretion to rule on motions *in limine* prior to trial. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom*. Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing, or irrelevant evidence. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). In considering motions *in limine*, which call upon the court to engage in preliminary evidentiary rulings under Rule 403 of the Federal Rules of Evidence, the Court begins by recognizing that these "evidentiary rulings [on motions *in limine*] are subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion . . . . Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and

irrational.'" *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 WL 454817, at *2 (M.D. Pa. Feb. 5, 2016) (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted)); see *Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994) (reviewing *in limine* rulings for abuse of discretion).

The Federal Rules of Evidence can be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth. *Ely*, 2016 WL 454817, at *3. The grounds for exclusion of evidence are described as an exception to the general rule favoring admission of relevant evidence, and by permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, the Court's discretion in considering evidentiary rulings should consistently be exercised in a fashion which resolves all doubts in favor of the admission of relevant proof in a proceeding. Only where the relevance of that proof is substantially outweighed by some other factors, should admission be denied. *Ely*, 2016 WL 454817, at *3. Evidence is "relevant" if its existence simply has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b).

However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. The balancing test under Rule 403 provides as follows:

> [t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.
>
> Fed. R. Evid. 403.

In general, the Federal Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. Fed. R. Evid. 402.

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires an expert witness to have "specialized knowledge" regarding the area of testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.
>
> Fed. R. Evid. 702.

"Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [, i.e., reliability]; and (3) the expert's testimony must assist the trier of fact [, i.e., fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (alterations in original) (quoting *Pineda v. Ford Motor Co.,* 520 F.3d 237, 244 (3d Cir. 2008)).

First, an expert is qualified if "the witness possess[es] specialized expertise." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The United States Court of Appeals for the Third Circuit interprets the qualifications requirement liberally, and notes that "a broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 741 (3d Cir. 1994); *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300

F.3d 325, 327-28 (3d Cir. 2002) ("[T]his specialized knowledge can be practical experience as well as academic training and credentials...."). Thus, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.,* 80 F.3d 777, 782 (3d Cir. 1996); *see Pineda*, 520 F.3d at 244, n.11 (collecting cases that illustrate the permissive nature of qualifications requirement). "However, at a minimum, a proffered expert witness must possess skill or knowledge greater than the average layman." *Betterbox*, 300 F.3d at 328 (quotation omitted).

The second requirement under Rule 702 is that "the process or technique the expert used in formulating the opinion is reliable." *Paoli*, 35 F.3d at 742. Therefore, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief." *Paoli*, 35 F.3d at 742 (quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 590 (1993)). The court in Daubert noted that the assessment of whether testimony is based on a reliable foundation is "flexible." *Daubert*, 509 U.S. at 594.

The third and last requirement under Rule 702 is "that the expert testimony must fit the issues in the case." *Schneider*, 320 F.3d at 404. This requirement is satisfied where the "expert testimony proffered . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985). "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92. Although the

applicable standard for determining "fit" is "not that high," it is nonetheless "higher than bare relevance." *Paoli*, 35 F.3d at 745.

As a final note, in performing its gatekeeping function to determine whether an expert's proffered testimony is reliable and relevant under *Daubert* and Rule 702, the trial court "is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein." *Walker v. Gordon*, 46 F. App'x 691, 695 (3d Cir. 2002) (not precedential) (citing *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.")).

## III. DISCUSSION

Defendants seek to preclude portion of testimony by Johnson's expert Dr. Saleh. (Doc. 78, at 1). First, Defendants contend that the language in Dr. Saleh's testimony goes beyond the scope of informed consent under Pennsylvania Law. (Doc. 78, at 4). Specifically, moving Defendants state that Dr. Saleh's use of the phrases "standard of care" and "all potential complications" and his statement that Defendant Lutton lacked informed consent for surgery because he did not document the consent conversation, should all be precluded from his testimony at trial. (Doc. 78, at 4-8). Further, Defendants state that Dr. Saleh employs strict liability language by using the words "not optimizing" and such language should be precluded. (Doc. 78, at 9-11).

Johnson contends that Dr. Saleh's testimony should be permitted in full. (Doc. 81, at 4-9). Johnson argues that Dr. Saleh's use of the term "standard of care" pertains to the discussion of accepted medical standards in an informed consent claim and that moving Defendants' expert uses the same terms. (Doc. 81, at 4-5). Next, Johnson contends that he

agrees with moving Defendants and states that Dr. Saleh does not broadly state that Defendant Lutton was required to outline "all potential complications," but that Defendant Lutton failed to outline specific complications that were necessary to obtain informed consent. (Doc. 81, at 5-6). Third, Johnson states that he does not intend to use Defendant Lutton's lack of documentation to demonstrate that Defendant Lutton failed to receive informed consent, but instead to use the lack of documentation to address the weight of the evidence and the witness's credibility. (Doc. 81, at 6-8). Finally, Johnson argues that Dr. Saleh's "not optimizing" language has been taken out of context and that Dr. Saleh asserts specific instances of Defendant Lutton's failures and does not opine that Defendant Lutton conducted a general failure to optimize. (Doc. 81, at 8-9).

### A. Preclusion of Testimony that is Beyond the Legal Scope of Informed Consent

#### 1. "Standard of Care"

Moving Defendants take issue with Johnson's expert's use of the terms "standard of care." (Doc. 78, at 4-5). Johnson's expert, Dr. Saleh opined that "Dr. Jeffery Lutton, deviated from the *standard of care* during the initial consultation with Mr. Johnso[n] by not documenting nor fully disclosing all potential complications that can occur during and following [Total hip arthroplasty ("THA")] in a HIV patient, including the risk of HO." (Doc. 78-1, at 7) (emphasis added).

"In Pennsylvania, informed consent claims sound in battery." *Conway v. A.I. Dupont Hosp. for Child.,* No. 04-4862, 2009 WL 57016, at *4 (E.D. Pa. Jan. 6, 2009); *see also Fitzpatrick v. Natter,* 961 A.2d 1229,1241 n. 13 (Pa. 2008) ("An informed consent action . . . sounds in battery rather than in negligence."). However, courts still utilize the terms "standard of care"

when discussing the issue of informed consent. *See Weiss v. Green*, 129 F. Supp. 2d 742, 746 (M.D. Pa. 2001) (discussing whether expert testimony is helpful "as to whether the standard of care mandates that the patient be informed of the risks, benefits, and complications of the surgery") *see also Festa v. Greenberg*, 354 Pa.Super. 346, 353 (Pa. Super. Ct. 1986) ("In determining whether a physician breached his duty to his patient to apprise him of material risks involved in a recommended medical procedure and available alternatives, the standard of care is . . . whether the physician disclosed those risks which a reasonable man would have considered material . . . .").

Additionally, Defendants' expert also uses the terms "standard of care" when discussing the issue of informed consent. (Doc. 78-1, at 7; Doc. 82-1, at 5,6). Moving Defendants' expert Dr. Lee opined that "Dr. Jeffrey Lutton did not deviate from the *standard of care* during his preoperative evaluations of Mr. Johnson prior to the hip replacement surgeries. Dr. Lutton did what a reasonable physician would do in discussing the risks, benefits, and alternatives of treatment with his patient." (Doc. 82-1, at 5) (emphasis added); *see Weiss*, 129 F. Supp. 2d at 746 ("In this case, both expert reports address the issue of informed consent and the risk of pain . . . in terms of the 'standard of care,' requiring physicians to discuss th[e] risks and other complications and alternatives to surgery.") As the terms "standard of care" are commonly used when discussing a physician's duty of informed consent and both moving Defendants' and Plaintiff's experts use the terms in their expert reports, it does not appear that such language would confuse the jury or cause them to equate the informed consent claim with Johnson's negligence claim. Thus, moving Defendants' motion shall be **DENIED** as to the use of the phrase "standard of care." (Doc. 78, at 4-5).

### 2. "All Potential Complications"

Moving Defendants aver that Johnson's expert's use of the terms "all potential complications" is not in accordance with the legal issue that will be presented to the jury. (Doc. 78, at 5-7). Johnson's expert, Dr. Saleh opined that "Dr. Jeffery Lutton, deviated from the standard of care during the initial consultation with Mr. Johnso[n] by not documenting nor fully disclosing *all potential complications* that can occur during and following THA in a HIV patient, including the risk of HO." (Doc. 78-1, at 7) (emphasis added).

"Consent is informed if the patient has been given a description of a procedure set forth in subsection (a) and the risks and alternatives that a reasonably prudent patient would require to make an informed decision as to that procedure. The physician shall be entitled to present evidence of the description of that procedure and those risks and alternatives that a physician acting in accordance with accepted medical standards of medical practice would provide." *Est. of Grier ex rel. Grier v. Univ. of Pennsylvania Health Sys.*, No. CIV.A. 07-4224, 2009 WL 1652168, at *6 (E.D. Pa. June 11, 2009) (citing 40 P.S. § 1303.504(a)-(b)). However, a physician is not required "to disclose all known information, but [must] advise the patient of the facts, risks, complications and alternatives that a reasonable person in the patient's situation would consider significant in deciding whether to proceed with the surgery." *Dandy v. U.S.,* 2005 WL 1388019, at *4 (E.D. Pa. June 7, 2005); *see also Gouse v. Cassel,* 615 A.2d 331, 334 (Pa. 1992).

In his expert report, Dr. Saleh opines that Defendant Lutton "deviated from the standard of care during the initial consultation with Mr. Johnso[n] by . . . not fully disclosing all potential complications that can occur during and following THA in a HIV patient." (Doc. 78-1, at 7). Dr. Saleh goes on to say those complications include an "increased risk of HO[,

- 10 -

i]nfectious complications such as cellulitis, abscesses, pyomyositis, septic bursitis, septic arthritis, and osteomyelitis[, and] . . . [n]on-infectious complications such as polymyositis, drug-induced myopathy, myositis ossificans, adhesive capsulitis, bone marrow abnormalities, and hypertrophic osteoarthropathy . . . ." (Doc. 78-1, at 7). Dr. Saleh also details what complications Johnson experienced postoperatively. (Doc. 78-1, at 7). Although Dr. Saleh details explicitly what potential complications a reasonable person in Johnson's situation would consider significant, the phrase "all potential complications" implies that Defendant Lutton was required to advise Johnson of every possible complication associated with surgery and not just the complications that Dr. Saleh listed. As such, the term "all" is not permitted when discussing potential complications as Defendant Lutton did not have a duty to advise Johnson of "all" potential complications. *See Dandy,* 2005 WL 1388019, at *4. However, Dr. Saleh may testify to the potential complications listed in his expert report. (Doc. 78-1, at 7). Thus, moving Defendants' motion shall be **GRANTED** regarding the term "all" in Dr. Saleh's iteration of "all potential complications." (Doc. 78, at 5-7; Doc. 78-1, at 7).

    **3. Lack of Documentation**

Defendants submit that Johnson's expert should be precluded from stating that Dr. Lutton's failure to document his informed consent conversation with Johnson is indicative of a lack of informed consent. (Doc. 78, at 7-8). However, Defendants state that "the lack of documentation may go to the weight of the evidence and to witness credibility." (Doc. 78, at 8). Dr. Saleh opined that "Dr. Jeffery Lutton, deviated from the standard of care during the initial consultation with Mr. Johnso[n] by *not documenting* nor fully disclosing all potential complications that can occur during and following THA in a HIV patient, including the risk of HO." (Doc. 78-1, at 7) (emphasis added).

"There is no cause of action in Pennsylvania for negligent documentation." *Shober v. St. Joseph Med. Ctr.*, No. 1887 MDA 2018, 2020 WL 2026118, *8 (Pa Super. 2020). However, "a lack of documentation can be considered by the jury in its credibility assessments." *McKinnon v. Harlow*, No. 12-6308, 2015 WL 400471, at *13 (E.D. Pa. Jan. 28, 2015); *see also Commw. v. Valette*, 613 A.2d 548, 549 (Pa. 1992). Johnson explains that he does not intend to "argue a lack of informed consent based solely on the lack of documentation" and instead outlines that his intended use involves the weight of the evidence and witness credibility. (Doc. 81, at 6-8). First, Johnson states that the informed consent claims rests on "the recollections of Defendant Dr. Lutton and Plaintiff Mr. Johnson [and] the documentation and lack of documentation regarding the specific conversations regarding the risks of the procedures is relevant." (Doc. 81, at 7). Next, Johnson states that he would use the lack of documentation to respond to Dr. Lutton's deposition statement that he generally doesn't discuss certain risks with patients and that he sometimes notes the discussions about the risks of surgery. (Doc. 81, at 7-8). Thus, these purported reasons would help demonstrate Defendant Lutton's credibility as a witness.

The lack of documentation by Defendant Lutton regarding conversations with Johnson about potential complications is relevant evidence to the case as it pertains to the weight of the evidence and to witness credibility. *See McKinnon*, 2015 WL 400471, at *13. However, such evidence is improper to demonstrate that Defendant Lutton failed to obtain informed consent due to his lack of documentation. *See Shober*, 2020 WL 2026118, at *8. As such, any evidence regarding Defendant Lutton's documentation or lack of documentation regarding conversations about potential complications from medical procedures shall be limited to credibility or weight of the evidence purposes and cannot be used to demonstrate

evidence of liability of Defendant Lutton's failure to obtain informed consent. Defendants' motion shall be **GRANTED** and Dr. Saleh shall be precluded from testifying that Defendant Lutton's lack of documentation demonstrates a lack of informed consent.

B. PRECLUSION OF TESTIMONY USING STRICT LIABILITY LANGUAGE

Defendants submit that Plaintiff's expert presents "strict liability theories" when he states that Dr. Lutton "deviated from the standard of care . . . by not optimizing Mr. Johnson's medical state preoperatively to minimize potential infection." (Doc. 78, at 9; Doc. 78-1, at 7). Defendants state that this language "creates a standard in which the breach is proven by the occurrence of an injury." (Doc. 78, at 10). Johnson responds that "[r]ead in the context of the entire report, Dr. Saleh has asserted specific failures of Defendant Dr. Lutton prior to October 2018 excision of [HO] procedure." (Doc. 81, at 8). Additionally, Johnson states that Dr. Saleh's opinion "is not a catch-all attempt to assert a strict liability theory," but instead directly references specific criticisms. (Doc. 81, at 9).

"Under Pennsylvania law, medical malpractice is 'broadly defined as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services.'" *Brown v. Hahnemann Univ. Hosp.*, 20 F. Supp. 3d 538, 542 (E.D. Pa. 2014) (quoting *Toogood v. Rogal*, 824 A.2d 1140, 1145 (2003)). A plaintiff must demonstrate: "(1) the physician owed a duty to the patient; (2) the physician breached the duty; (3) the breach was the proximate cause of the harm suffered; and (4) the damages suffered were a direct result of the harm." *Brown*, 20 F. Supp. 3d at 542 (citing *Hightower–Warren v. Silk,* A.2d 52, 54 (Pa. 1997)). Further, "[t]here is no requirement that physicians be infallible, 'and making a mistake

is not negligence as a matter of law.'" *Brown*, 20 F. Supp. 3d at 543 (quoting *Toogood*, 824 A.2d at 1150).

In his expert report, Dr. Saleh states that Defendant Lutton "deviated from the standard of care during the second consultation with Mr. Johnso[n] . . . by not optimizing Mr. Johnson's medical state preoperatively to minimize potential infection." (Doc. 78-1, at 7). Although Dr. Saleh references the second consultation, it is unclear which previous findings specifically apply. (Doc. 78-1, at 7). As such, Dr. Saleh's statement that Defendant Lutton did "not optimiz[e]" Johnson's medical state preoperatively may imply a level of perfection that is not required to demonstrate medical negligence. *See Brown*, 20 F. Supp. 3d at 542. Thus, Dr. Saleh may not imply that Defendant Lutton's care was not optimal, but may list specific failures that are clearly linked to Dr. Lutton's care in his testimony. Moving Defendants' motion *in limine* shall be **GRANTED** as it pertains to the phrase "not optimizing" as the statement imposes a higher duty on Defendant Lutton than is required under Pennsylvania law. *See Brown*, 20 F. Supp. 3d at 542.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' motion *in limine* is **GRANTED in part and DENIED in part**. (Doc. 77).

An appropriate Order follows.

BY THE COURT:

Dated: March 7, 2022

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**